**GLASER, et, Plaintiffs, v. DUNLAP, Defendant.**

Municipal Court, Dayton Ohio.

No. 91474.   Decided September 30, 1948.

Pickrel, Schaeffer & Ebeling, Dayton, for plaintiffs.
Matthews & Altick, Dayton, for defendant.

## OPINION

By McBRIDE, J:

### FINDING OF FACT

Two automobiles collided at the junction of paths of travel located wholly within a private outside parking lot maintained by the Frigidaire Corporation for the exclusive use of its employees. This lot was divided into spaces for parking by iron pipes extending north and south. Employees parked diagonally and at right angles to these pipes. Aisles existed in the center between these pipes; the aisles led to a public road at the north end of the lot. Another passage (identified as Driveway No. 1) ran east and west across the center of this area of the lot permitting cars to move from one aisle to another and to a public road on the west. Driveway No. 1 ran eastwardly and ended at another private way which ran northwardly, parallel with the aisles between the parked cars, to a public road. The physical features generally appear on the rough sketch marked Plaintiff's Exhibit "A".

On the day in question, plaintiff parked his car in the center of this portion of the lot facing west against an iron pipe, his car being the third car south of Driveway No. 1. Shortly after 3:30, and before there was other activity in the lot, plaintiff started his car, backed southwardly and then

proceeded forward in low gear, approaching the way identified as Driveway No. 1. At the same time, the defendant left work and met his wife who had driven his car to the plant. Defendant entered his car on another private north-south passage to the west of the parking spaces. Defendant turned right and proceeded eastwardly on Driveway No 1, approaching the passage in which the plaintiff was also moving. The parking lot was at that time relatively full. No other vehicles were as yet moving, but many would be in a matter of a few minutes.

Plaintiff moved northwardly in low gear at a slow pace, looked to the left, then right on Driveway No. 1 and accelerated speed in crossing the driveway. Once in the junction of the two ways, plaintiff looked straight ahead and did not see defendant's car. The impact took place after plaintiff was more than halfway across Driveway No. 1.

The defendant made his right turn and increased speed as he passed the aisles, reserved for office employees. Defendant placed his car in high gear before or as he reached the passage just west of the one from which plaintiff was then entering or about to enter. Defendant was traveling approximately 20 miles per hour at this point. At this time, and about 25 feet from the point of impact, defendant saw plaintiff's car for the first time. Plaintiff was then halfway across Driveway No. 1. Defendant applied his brakes and skidded on loose gravel for practically 18 feet. While doing so, he swerved to the left into the passage into which plaintiff was headed and struck the left side of plaintiff's car.

The respective interests of the plaintiffs and the damages to the vehicle were agreed to by stipulation which is incorporated herein.

Either party may submit suggested findings of fact to the Court to include any important issue of fact that may have been overlooked by the Court in complying with the request for separate findings.

### FINDING OF LAW

The first question in this case is whether or not the Uniform Traffic Act establishes the standard of care at the "intersection" in question on the private parking lot of the Frigidaire Corporation. We believe that it does not and refer first to **State v. Root, 132 Oh St 229, 7 O. O. 514.** True, that case involved a manslaughter charge, and being criminal in nature, the liability under the statute could not be extended by construction. The circumstances in this case fail to reveal any purpose, intent, or us by the corporation, the employees or the public of any of the passages in the park-

ing lot as a public way. Since that decision, §12404-1 GC has been repealed and §6307-18 GC enacted.

The Supreme Court has found that §6308-6 GC (the guest statute) applies to the operation of vehicles over private ways or avenues of travel. **Kitchens v. Duffield, 149 Oh St 500, 37 O. O. 200.** The Court points out that §6308-6 GC is a separate and independent act, complete in itself. The Uniform Traffic Act is not a part of §6308 GC.

The Traffic Act, §6307-1 GC, et seq, is designed to establish uniform rules of conduct on avenues specifically defined and identified by the various sections included within the act itself. Highways and avenues are defined and classified. Private roads and driveways are defined but not otherwise controlled except where they connect with public streets and highways.

**Sec. 6307-8 GC** permits owners of real property **USED BY THE PUBLIC** for purposes of vehicular travel to require conditions in addition to those specified in the act. The facts in this case repel any conclusion that either of the passages in question were used by the public for vehicular travel. The testimony is that this lot and the ways available for travel were wholly for the private use of employees in parking their cars while at work.

We therefore conclude that §6307-40 GC of the Uniform Traffic Act has no application to the operation of motor vehicles of employees on the passage ways within a private outdoor parking lot maintained by an employer for the exclusive use of its employees.

As indicated in the State v. Root case, what may or may not be a road or highway, within the meaning of the statute, must be determined from all the facts and circumstances in each particular case. Undedicated driveways in a residential development would present a different problem, as would the operation of vehicles in the lanes of a public outdoor theatre. In the instant case, the use is private and restricted.

It is argued by the defendant that no "intersection" or junction existed at the place of the collision. In other words, that only one driveway (numbered one on the exhibit) existed; that defendant was using that one and only driveway and, consequently, was entitled to an undefined preferential right by reason of plaintiff's entry into the driveway from a nonexistent passage. This argument is inconsistent with the facts of the case. Whether we designate the ways of travel as aisles, lanes, passages, or driveways is immaterial. Each was provided for the sole use of employees in moving their vehicles in and out of the lot. Driveway numbered "one"

permitted cars to maneuver more freely within the lot but was in no sense, a preferential way. It terminated at the east, at the end of the lot where it connected with another lane (designated Driveway No. 2) which ran parallel with all the other aisles up to a public road, as did all the other north-south aisles.

The common law rule as set forth in cases arising before our present statutes were enacted is that an operator of a motor vehicle has no right to assume that the road is clear, but that under virtually all circumstances and at all times, he must be reasonably vigilant and must anticipate and expect the presence of others. 5 Am. Jur. Automobiles Sec. 168.

The rule is that he who reaches a crossing or street intersection first is entitled to cross, unless the circumstances are such that an ordinary prudent person would not do so. The circumstances determine the care required and even if one should arrive at the point of intersection first, the jury is to determine from all the facts whether or not he used such care. **Cincinnati Traction Co. v. Bollman, 1 Abs 674.**

In the absence of statute or ordinance regulating the manner in which persons should drive when they meet at the intersection of two streets, the rule of the common law applies, and each person must use ordinary or reasonable care to avoid injury to the other; and this reasonable care must be adapted to the place, the circumstances and surrounding conditions. Joseph v. Larkworthy, 15 O. N. P. N. S. 561.

Each party is required to use such care as a reasonably prudent person would use considering all the surrounding circumstances. The normally prudent person would look to the left, then right, because on public highways, he is required to yield to a vehicle on the right. This practice becomes a habit, an established custom, by reason of the operation of the Uniform Traffic Act. In a crowded lot, the operator of a vehicle can see very short distances and must drive more slowly than is otherwise possible. This is especially true at the time in question when the employees on the afternoon shift were leaving and many of the parked cars would suddenly begin moving.

Plaintiff reached and entered the "driveway" on which defendant was traveling, well in advance of the defendant and at a much slower speed. We do not find that he was guilty of any negligence, contributory or otherwise. The defendant traveled at a speed greater than was reasonably proper under the circumstances and was unable to stop within a reasonable distance even after he discovered the presence of plaintiff's

car. In reaching this conclusion, we considered defendant's speed, his failure to observe the other vehicle until after plaintiff reached the middle of the driveway, the existence of so many other passages on each side of the defendant from any one of which another vehicle may have entered his path of travel and the condition of the driveway which caused him to slide once he applied his brakes.

Accordingly, we find that the negligence of the defendant proximately caused the collision and resulting damage to the respective plaintiffs, as their interests appear in the stipulation of facts agreed to at the time of the trial.