The STATE of Ohio, Appellee,

v.

GRUBB, Appellant.

[Cite as *State v. Grubb* (1993), 82 Ohio App.3d 187.]

Court of Appeals of Ohio,
Franklin County.

Nos. 92AP–610, 92AP–611.

Decided Jan. 26, 1993.

*Ronald J. O'Brien*, City Attorney, *Marcee C. McCreary*, City Prosecutor, *Antonio B. Paat, Jr.*, and *Brenda J. Keltner*, Assistant City Prosecutors, for appellee.

*Christopher T. Cline*, for appellant.

WHITESIDE, Judge.

Defendant-appellant, Jeffrey Scott Grubb ("defendant"), appeals from his conviction in the Franklin County Municipal Court of operating a motor vehicle while under the influence of alcohol. Defendant raises two assignments of error, as follows:

1. "The trial court erred in finding that Ohio Union Drive, the location where the alleged offenses took place, was a 'street or highway' as defined in 4511.01(BB), and further in assessing points against Defendant–Appellant

under Revised Code section 4507.021 for violation of the charged offenses upon a public highway."

2. "The trial court erred in denying Defendant–Appellant's motion to suppress evidence garnered from a warrantless arrest off of the Ohio State University Campus by an Ohio State University police officer and in finding that probable cause for such arrest existed."

Case No. 92AP–610 involves the charge of driving while under the influence, and case No. 92AP–611 involves the related charge of driving with a concentration of alcohol in excess of statutory limits. The sentence was imposed in case No. 92AP–611. A third charge of making an improper left turn was dismissed by the trial court.

On November 2, 1991, at approximately 12:35 a.m., defendant was stopped in the city of Columbus close to, but off of, University property by Ohio State University police officers for allegedly disregarding a no-left-turn traffic sign posted at the intersection of a driveway called "Ohio Union Drive" and North High Street, a public street. Subsequent to the stop, defendant was tested for driving while under the influence of alcohol or drugs. Defendant tested .190 on a BAC verifier.

Defendant pled not guilty and demanded a jury trial. Thereafter, defendant filed a motion to suppress evidence obtained as a result of the allegedly illegal arrest, specifically the breath test and other evidence of the consumption of alcohol, there being no evidence that the university officers had any basis for believing defendant might be under the influence prior to stopping him in the city of Columbus on a public street. The trial court denied defendant's motion to suppress, and defendant thereafter changed his plea to no contest upon the charges of driving while intoxicated, with a stipulated finding of guilty. As indicated above, the charge of making a prohibited left turn was dismissed. The trial court found defendant guilty and sentenced him on this so-called "per se" offense of operating a motor vehicle while intoxicated.

By his first assignment of error, defendant contends that the trial court erred in finding that Ohio Union Drive was a "street or highway" as defined in R.C. 4511.01(BB) and further in assessing points against defendant under R.C. 4507.021 for commission of the offenses upon a public highway.

R.C. 4511.01(BB) provides that:

" 'Street' or 'highway' means the entire width between the boundary lines of every way open to the use of the public as a *thoroughfare* for purposes of vehicular travel." (Emphasis added.)

The main point of contention herein is whether Ohio Union Drive is an access drive or a way "open to the use of the public as a thoroughfare."

The testimony of the university campus planner indicates that Ohio Union Drive is not a thoroughfare other than to provide access to the Ohio Union and to an adjacent parking garage, to permit "pick-up and drop-off activity," and also to provide some off-street parking. The university, apparently, despite its name, calls Ohio Union Drive a "street," at least the campus planner did. She also testified that the university reserves the right to prohibit the general public from using Ohio Union Drive and to limit such use to persons associated with the university. See R.C. 4511.08. In other words, use of Ohio Union Drive by the public is apparently by the grace of the university.

■ Lands owned by public entities, even though used for vehicular travel by the public, do not necessarily rise to the status of "public highways." *Koch v. Dollison* (1981), 2 Ohio App.3d 141, 2 OBR 155, 440 N.E.2d 1362. Nor does the fact that a drive is on public property *ipso facto* make it a public street or highway. Nor is every street regulated the same; for example, "alleys" as defined by R.C. 4511.01(XX) are not streets for all purposes.

Ohio Union Drive is not used as a "thoroughfare," as contemplated within the meaning of R.C. 4511.01(BB). Although the term itself is not defined in the Revised Code, Black's Law Dictionary (5th Ed.1978) 1327, defines "thoroughfare" as a "street or passage through which one can fare (travel); that is, a street or highway affording an unobstructed passage at each end into another street or public passage." In *State v. Benshoff* (Mar. 21, 1990), Wayne App. No. D89–3–304, unreported, 1990 WL 31803, the court held that, merely because a vehicle can enter at one end and exit at the other does not make the street a "thoroughfare" for the purposes of vehicular travel. Instead, this must be its primary purpose. This court in *Jewett v. State* (App.1936), 22 Ohio Law Abs. 37, indicated that a thoroughfare includes every road or street open to and used by the public generally as a means of passage.

In this case, the primary purpose of Ohio Union Drive is to give access to the Ohio Union and to the adjacent parking garage. Although testimony indicates that Ohio Union Drive may sometimes be used for other purposes, such other purposes are secondary in nature. The contention that Ohio Union Drive is intended to afford access from Twelfth Avenue onto North High Street is nonsensical if one cannot turn north onto North High Street. There is no logical reason why a person would make a left turn from Twelfth Avenue onto Ohio Union Drive and then travel several hundred feet north on Ohio Union Drive in order to turn right to go south on North High Street when a right turn onto North High Street could be made from Twelfth Avenue by traveling no more than one hundred feet past the entrance to Ohio Union Drive.

Also supporting the conclusion that Ohio Union Drive is not a "street or highway," as defined in R.C. 4511.01(BB), is the statement in *Buell v. Brunner* (1983), 10 Ohio App.3d 41, 10 OBR 49, 460 N.E.2d 649, in which the court stated that: " 'Street or highway,' " as defined in R.C. 4511.01(BB), "does not include a school parking lot or driveways on school property leading thereto." In light of the foregoing, the trial court erred as a matter of law in finding Ohio Union Drive to be a "street or highway," as defined in R.C. 4511.01(BB).

■ In addition, the evidence indicates that the no-left-turn sign was improperly placed and that the sign did not comply with the manual adopted pursuant to R.C. 4511.09 and, thus, could not be enforced as prohibiting left turns, even if there were a regulation to be enforced in light of R.C. 4511.11 and 4511.12. Here, the evidence indicates that the sign was erected by university employees but that the city of Columbus has no record of such a sign being authorized with respect to the use of North High Street. Likewise, there is no evidence that the university adopted any rule or regulation authorizing the erection of the sign. See R.C. 4511.16. The trial court found the sign not to be in compliance with the manual adopted pursuant to R.C. 4511.09, both as to the height of the single sign being too low and the absence of the required second sign but did not apply the mandate of R.C. 4511.11 and 4511.12 that no traffic regulation requiring signs can be enforced unless an official sign is in proper position. The trial court found merely that the sign was sufficiently legible, which would be another reason a regulation could not be enforced.

As part of its first assignment of error, defendant also contends that the trial court erred in assessing points against him under R.C. 4507.021 for violation of the charged offenses upon a public highway. In light of our disposition of the second assignment of error, this contention is well taken, and the trial court erred in assessing points against defendant. Defendant's first assignment of error is well taken.

■ By his second assignment of error, defendant contends that the trial court erred in denying his motion to suppress evidence garnered from a warrantless arrest off of the Ohio State University campus by Ohio State University police officers and in finding that probable cause for such arrest existed.

The parties stipulated that the only reason defendant was stopped by university police is because he disregarded a no-left-turn sign at the intersection of Ohio Union Drive and North High Street. The sign purports to prohibit motorists from turning left from Ohio Union Drive onto North High Street. The sign attempts to regulate traffic on North High Street, which is

within the jurisdiction of the city of Columbus, not the university. The jurisdiction of the university police officers does not extend off the university property unless under an exception provided by statute. The university police have no authority to enforce traffic regulations on North High Street. The doctrine of *State v. Aleshire* (Aug. 5, 1986), Franklin App. No. 85AP–869, unreported, 1986 WL 8671, is not applicable here since the question is not limited to whether the police officers acted within their jurisdiction but extends to whether there was a basis for an arrest both legally and factually.

In this case, the university police officers had no reasonable basis for believing that the defendant committed a traffic offense on university property, nor any reasonable suspicion for stopping the defendant. The evidence reveals that a motorist must leave university property entirely before making a left turn onto North High Street. The evidence is unclear as to the division between university property and the right-of-way of North High Street, a multi-lane street. However, the evidence indicates the stop sign was located some distance from the curb line, with an intervening sidewalk. Therefore, a violation, even if it occurred, could not have occurred within the jurisdiction of the university and its police officers but, rather, within the jurisdiction of the city of Columbus and the Columbus police.

In *Kettering v. Hollen* (1980), 64 Ohio St.2d 232, 235, 18 O.O.3d 435, 437, 416 N.E.2d 598, 600, it is stated that: "The exclusionary rule will not ordinarily be applied to evidence which is the product of police conduct violative of state law but not violative of constitutional rights." That case, however, involved application of a "hot pursuit" doctrine, which is not present here since defendant was not observed to have engaged in conduct which would give rise to a reasonable belief that he had committed a crime upon university property in the extent of the officer's jurisdiction. R.C. 2935.03 confers upon a university police officer only power to arrest upon university property a person "found violating" a state law or municipal ordinance and off university property only if the offense occurred upon university property and the officer immediately initiated pursuit on university property and necessarily continued off university property to effect the arrest. Here, the officer admittedly was not on university property either when he observed defendant's conduct or when he initiated the "pursuit." In light of our other holdings, we need not address the issue of whether the arrest was illegal for that reason. Accordingly, the stop for the alleged improper left turn was unlawful, and the subsequent "search" violated defendant's Fourth and Fourteenth Amendment rights to be free from unreasonable searches and seizures. The exclusionary rule is applicable in the instant case, and defendant's second assignment of error is, therefore, well taken.

Although the state contends that defendant failed properly to raise the issue in the trial court, the record reflects that contention to be inaccurate and totally without merit. Defendant filed a motion to suppress evidence obtained as a result of an illegal arrest. Although defendant directly referred to lack of probable cause only with respect to the OMVI arrest, he also stated to the effect that there was no probable cause for believing he committed an offense on university property.

For the foregoing reasons, both assignments of error are sustained, the judgment of the Franklin County Municipal Court is reversed, and this cause is remanded to that court with instructions to enter judgment in accordance with law, consistent with this opinion.

*Judgment reversed*
*and cause remanded*
*with instructions.*

JOHN C. YOUNG, P.J., and TYACK, J., concur.