OPINION
This is an accelerated appeal taken from a final judgment of the Chardon Municipal Court. Appellant, Joseph C. Wendel, appeals from his conviction for driving under suspension in violation of R.C. 4507.02(B)(1) following the denial of his motion to dismiss the charge.
On December 13, 1996, Officer James Woolf ("Officer Woolf") of the Russell Township Police Department was on routine evening patrol. In addition to being a member of the Russell Township police force, Officer Woolf had also previously been appointed as a township constable in accordance with R.C. 509.01.
At approximately 8:00 p.m. on the evening in question, appellant was driving along a portion of State Route 87 known as Kinsman Road in Geauga County. As he did so, appellant crossed over from Russell Township into Newbury Township.
Shortly after appellant entered Newbury Township, Officer Woolf witnessed him traveling eastbound in the westbound lane of traffic on Kinsman Road. Appellant was attempting to pass several vehicles in a no-passing zone in violation of R.C. 4511.31. Upon observing this, Officer Woolf initiated a traffic stop of appellant. It was undisputed that the offense and subsequent stop both took place in Newbury Township.
After effectuating the stop, Officer Woolf ran a license check on appellant and discovered that his Ohio driving privileges had previously been suspended for failure to comply with the financial responsibility laws. The officer issued citations to appellant for improper passing in violation of R.C. 4511.31 and driving under FRA suspension in violation of R.C. 4507.02(B)(1). Officer Woolf arrested appellant and transported him to the police station for the latter offense.
On March 10, 1997, appellant filed a motion to dismiss both charges. As grounds for the motion, appellant asserted that he was the subject of an illegal arrest because Officer Woolf arrested him for an infraction that occurred outside the jurisdictional boundaries of Russell Township. No pretrial hearing was held on this motion.
The case was continued several more times as the parties engaged in plea bargaining, but no agreement was ever reached. Eventually, the matter proceeded to a bench trial on October 21, 1997. At the outset of this proceeding, counsel for appellant reminded the trial court of the pending motion to dismiss the charges. Upon agreement of the parties, the trial court decided that it would rule on the motion based on the evidence adduced during the trial.
The only witness to testify at trial was Officer Woolf. During his testimony, the state stipulated that the moving violation (i.e., the improper passing) and subsequent traffic stop took place entirely within Newbury Township. At the conclusion of the trial, counsel for appellant asked that he be given time to submit a brief on the jurisdictional question presented by the case. The trial court granted the request and established a briefing schedule.
Counsel for appellant, however, failed to file a brief in support of the position that Officer Woolf was without authority to arrest appellant on the stretch of Kinsman Road in Newbury Township. Consequently, the trial court opted to proceed by issuing a judgment entry on November 20, 1997 in which it found appellant guilty of driving under suspension in violation of R.C.4507.02(B)(1).
For this offense, the trial court sentenced appellant to one hundred eighty days in jail and a fine of $250. Execution of the sentence was stayed pending appeal. Although not expressly ruling on the motion to dismiss, the trial court implicitly overruled appellant's request to dismiss the charges. The trial court's judgment entry made no mention of the citation for improper passing under R.C. 4511.31. The record is silent as to the disposition of this charge.[1]
From his conviction for driving under suspension, appellant perfected a timely appeal in this court. He now asserts the following assignments of error:
 "[1.] The trial court erred by holding that the Russell Township police officer had jurisdiction to make an extra-territorial arrest.
 "[2.] The trial court erred by allowing a computer print-out to be used as a basis for appellant's conviction."
In his first assignment of error, appellant asserts that the trial court erred by ruling that Officer Woolf had the authority to arrest him for an offense that took place in Newbury Township. This is a reference to the trial court's implicit denial of the motion to dismiss the charges against appellant.
The motion to dismiss presented a question of law for the trial court's consideration. Accordingly, we will apply a de novo
standard of review to the decision of the trial court.
The question presented is whether the arrest effectuated by Officer Woolf was legal or illegal. The state contends that the arrest was valid because Officer Woolf was not only a township police officer, but was also a township constable duly appointed by the Russell Township Board of Trustees. This argument is predicated upon the respective limitations on the jurisdictions of a township police officer and a township constable.
R.C. 505.48 establishes the procedure by which a township police district may be created. It provides in relevant part:
 "(A) The board of township trustees of any township may, by resolution adopted by two-thirds of the members of the board, create a township police district comprised of all or a portion of the unincorporated territory of the township as the resolution may specify."
 The jurisdiction of a township police officer is generally limited to the township police district. The police district, in turn, is comprised of that portion of the unincorporated territory of the township specified in the resolution creating the district.
By contrast, R.C. Chapter 509 governs township constables. R.C. 509.01 states in part that "the board of township trustees may designate any qualified persons as police constables and may provide them with the automobiles, communication systems, uniforms, and police equipment that the board considers necessary."
As for the powers and duties of such constables, R.C. 509.05
provides in part:
 "In addition to the county sheriff, constables shall be ministerial officers of the county court in all cases in their respective townships, and in criminal cases, they shall be such officers within the county. They shall apprehend and bring to justice felons and disturbers of the peace, suppress riots, and keep and preserve the peace within the county. * * *
"* * *
 "The authority of a constable in serving any process, either civil or criminal, and in doing his duties generally shall extend throughout the county in which he is appointed * * *." (Emphasis added.)
 Based on this language, the state takes the position that the territorial jurisdiction of a township constable is the entire county in which the township is situated. As such, the state is of the opinion that constables have the ability to make arrests anywhere within the county, regardless of whether or not the arrest is executed pursuant to a warrant. Under this view, Officer Woolf's arrest of appellant was legal because he was not only a Russell Township police officer, but also a township constable.
Despite the foregoing language in R.C. 509.05, appellant maintains that a township constable's ability to make warrantless arrests is actually limited by R.C. 2935.03. This statute provides in part:
 "(A) A sheriff, deputy sheriff, marshal, deputy marshal, municipal police officer, township constable, police officer of a township * * * shall arrest and detain, until a warrant can be obtained, a person found violating, within the limits of the political subdivision
* * * in which the peace officer is appointed, employed, or elected, a law of this state, an ordinance of a municipal corporation, or a resolution of a township." (Emphasis added.)
 Under appellant's reading of R.C. 2935.03, the authority of a township constable to make arrests is confined to the limits of the political subdivision in which the constable is appointed, to wit: the township. In the case sub judice, this would mean that Officer Woolf was limited to making arrests within the geographical boundaries of Russell Township, notwithstanding the fact that he was also a township constable in addition to being a township police officer.
Although R.C. 2935.03(A) stands for the general proposition that a peace officer is limited to his or her territorial jurisdiction when making a warrantless arrest, the statute goes on to establish several exceptions. The first such exception is the so-called hot pursuit doctrine. Pursuant to this rule, a peace officer may engage in the extraterritorial pursuit and arrest of a person if all of the following apply: (1) the pursuit takes place without unreasonable delay after the offense is committed; (2) the pursuit is initiated within the limits of the political subdivision; and (3) the offense is at least a second-degree misdemeanor or a traffic offense for which points are chargeable. See R.C. 2935.03(D).
R.C. 2935.03(E) codifies a second exception to the basic tenet that law enforcement officers are prohibited from making warrantless arrests outside of their duly constituted territories. This division of the statute reads in part:
 "(E) In addition to the authority granted under division (A) or (B) of this section:
"* * *
 "(2) A member of the police force of a township police district created under section 505.48 of the Revised Code, a member of the police force of a joint township police district created under section 505.481 of the Revised Code, and a township constable appointed in accordance with section 509.01 of the Revised Code, * * * may arrest and detain, until a warrant can be obtained, any person found violating any section or chapter of the Revised Code listed in division (E)(1) of this section, other than sections 4513.33 and 4513.34 of the Revised Code, on the portion of any street or highway that is located immediately adjacent to the boundaries of the township police district or joint township police district, in the case of a member of a township police district or joint township police district police force, or the unincorporated territory of the township, in the case of a township constable."
Township police officers and township constables, therefore, may make arrests on any street or highway that is immediately adjacent to their jurisdictional boundaries for certain traffic code violations. The intent of this statutory language is to preclude challenges to the legality of traffic arrests that take place on one side of the road, as opposed to the other, when the street or highway where the offense occurred constitutes a boundary line between townships.
It should be noted that R.C. 2935.03(E)(2) refers to "the portion of any street or highway that is located immediately adjacent to the boundaries of * * * the unincorporated territory of the township, in the case of a township constable." The implicit meaning of this language is that township constables are normally limited to making warrantless arrests within the territorial boundaries of the township.
Thus, R.C. 509.05 and 2935.03 could be interpreted as being in conflict when it comes to the arrest authority of township constables. The former statute provides that the authority of a constable in doing his or her general duties extends throughout the county. By contrast, the latter statute seemingly suggests that the arrest authority of a constable is restricted to the limits of the township in which the constable is appointed in the absence of an applicable statutory exception.
When the possibility exists that two statutes are in conflict, R.C. 1.51 provides guidance to the judiciary. It states:
 "If a general provision conflicts with a special or local provision, they shall be construed, if possible, so that effect is given to both. If the conflict between the provisions is irreconcilable, the special or local provision prevails as an exception to the general provision, unless the general provision is the later adoption and the manifest intent is that the general provision prevail."
 In the instant case, there is a facial conflict between R.C. 509.05 and 2935.03 regarding a township constable's jurisdiction to arrest without a warrant. Given that such jurisdiction either extends over the entire county or is limited only to the township, the conflict between the two statutes is irreconcilable. Constables can either make warrantless arrests throughout the county as a matter of course, or they are confined to the territorial boundaries of the township in the absence of a statutory exception. Thus, R.C. 509.05 and 2935.03 cannot be construed so that effect is given to both on this point.
Having found that the conflict between the two statues is irreconcilable, we can apply the language of R.C. 1.51. It states that in such situations "the special or local provision prevails as an exception to the general provision, unless the general provision is the later adoption and the manifest intent is that the general provision prevail." R.C. 1.51.
In this case, R.C. 2935.03 is clearly the special provision, while R.C. 509.05 is the general provision. Therefore, R.C.2935.03 must prevail as an exception to R.C. 509.05, unless the latter is the later adoption and the manifest intent is that it prevail. R.C. 509.05 took effect on January 1, 1958, and was last amended on September 3, 1986. R.C. 2935.03, meanwhile, was repealed in its entirety and re-enacted on April 19, 1988. Given this, the current version of R.C. 2935.03 was enacted more recently than R.C. 509.05.[2]
 Moreover, there certainly is no manifest intent that R.C. 509.05 should prevail over R.C. 2935.03. If anything, the reverse is true. R.C. 509.05 simply provides for the general powers and duties of township constables, whereas the provisions of R.C. 2935.03 set forth the specific circumstances under which constables may make extraterritorial arrests without a warrant.
 In light of this, we hold that R.C. 2935.03 governs a township constable's jurisdiction to arrest without a warrant because it is more specific and more recently adopted in its current form than R.C. 509.05. At least two other appellate courts have reached the same conclusion. See State v. Smigelski (June 9, 1995), Lucas App. No. L-94-183, unreported, at 6, 1995 Ohio App. LEXIS 2434; State v. Schmidt (Nov. 26, 1990), Clermont App. No. CA90-02-016, unreported, at 6-8, 1990 Ohio App. LEXIS 5070. But, see, State v. Layman (1986), 29 Ohio App.3d 343, 345 (interpreting R.C. 509.05 as conferring county-wide arrest jurisdiction on constables without discussion of R.C. 2935.03).
Applying R.C. 2935.03 to the case at bar, Officer Woolf was outside of his jurisdiction when he arrested appellant for driving under suspension. Although the officer was also a township constable, his authority to make a warrantless arrest was confined to the territorial limits of Russell Township in the absence of a statutory exception under R.C. 2935.03.
Turning to the exceptions, it is obvious that the hot pursuit doctrine as codified in R.C. 2935.03(D) was inapplicable to Officer Woolf's arrest of appellant. The state stipulated at trial that appellant committed the traffic offense in Newbury Township and that Officer Woolf, therefore, initiated his pursuit outside the boundaries of Russell Township. This fact alone makes the exception for hot pursuit inapposite. See R.C. 2935.03(D)(2).
The R.C. 2935.03(E)(2) exception for warrantless arrests on adjacent streets and highways also did not apply to the situation herein. The express language of R.C. 2935.03(E)(2) states that a township constable may arrest and detain only those persons "found violating any section or chapter of the Revised Code listed in division (E)(1) of this section, other than sections 4513.33 and4513.34 of the Revised Code[.]" After effecting the traffic stop, Officer Woolf arrested appellant for driving under suspension in violation of R.C. 4507.02(B)(1). This statute is not one of the offenses listed in R.C. 2935.03(E)(1).
Thus, Officer Woolf's warrantless arrest of appellant in Newbury Township was in violation of R.C. 2935.03. Having determined that the arrest was not authorized by statute, the relevant inquiry is into what effect, if any, the illegal arrest had on the subsequent prosecution of appellant. In its simplest terms, the question presented is whether the evidence obtained by Officer Woolf against appellant is subject to exclusion due to the unlawfulness of the arrest. We conclude that the evidence was
subject to exclusion.
In Kettering v. Hollen (1980), 64 Ohio St.2d 232, the Supreme Court of Ohio stated that "the exclusionary rule will not ordinarily be applied to evidence which is the product of police conduct violative of state law but not violative of constitutional rights." Id. at 235. However, Hollen involved application of the hot pursuit doctrine which, as previously stated, was not present in this case.
Since Hollen, there has been a conflict among the various appellate districts in Ohio regarding the effect of an illegal arrest on a subsequent criminal prosecution. There are cases that stand for the proposition that an investigatory stop and arrest made in contravention of R.C. 2935.03 is per se unreasonable under the Fourth Amendment, thereby requiring the suppression of any evidence flowing from the stop and arrest. See, e.g., State v.Grubb (1993), 82 Ohio App.3d 187, 192; Smigelski, 1995 Ohio App. LEXIS 2434, at 7-10.
 Other districts, however, have interpreted Hollen as standing for the proposition that the exclusionary rule is inapplicable if the arrest was ultimately supported by probable cause. See, e.g., State v. Filler (1995), 106 Ohio App.3d 731; State v. Coppock (1995), 103 Ohio App.3d 405; State v. Brown (Apr. 16, 1999), Pickaway App. No. 98CA27, unreported, 1999 Ohio App. LEXIS 1983.
We agree with the reasoning of the Tenth District Court of Appeals in State v. Grubb, supra; see, also, Miller v. Leesburg
(Dec. 1, 1998), Franklin App. Nos. 97APE10-1379 97APE10-1380, unreported, 1998 Ohio App. LEXIS 5645. Officer Woolf was outside of the geographic boundaries of Russell Township at all relevant times. A township police officer cannot unilaterally expand his own jurisdiction. As a result, the seizure of appellant was perse unreasonable as a violation of the Fourth Amendment. Hence, the constitutional violation triggered an automatic application of the exclusionary rule. Thus, all evidence gathered against appellant as a result of the illegal stop should have been excluded by the trial court. Appellant's first assignment of error is sustained.
In his second assignment of error, appellant contends that the trial court erred by allowing a report from the Ohio Bureau of Motor Vehicles to be admitted into evidence. This assignment of error is now moot and need not be addressed pursuant to App.R. 12(A)(1)(c).
 Based upon the foregoing analysis, the judgment of the trial court is reversed, and judgment is entered for appellant.
Additionally, this court finds that its decision in this matter, while in accordance with the position of the Tenth District Court of Appeals taken in State v. Grubb, supra, is in conflict with the decisions rendered by the Ninth District Court of Appeals in State v. Filler, supra; the Fourth District Court of Appeals in State v. Brown, supra; and the Second District Court of Appeals in State v. Coppock, supra; State v. Ruble (June 26, 1998), Montgomery App. No. 16726, unreported, 1998 WL 425503; andState v. Hammons (Aug. 28, 1998), Montgomery App. No. 16931, unreported, 1998 WL 543363.
The rule of law on which the conflict exists is "whether an extraterritorial investigatory stop of a motorist by a police officer for an offense committed outside of the officer's statutory jurisdiction automatically constitutes a per se
unreasonable seizure under the Fourth Amendment, thereby triggering the mandatory application of the exclusionary rule to suppress all evidence flowing from the stop."
Accordingly, the court hereby certifies the record of this case to the Supreme Court of Ohio for review and final determination pursuant to Section 3(B)(4), Article IV, Ohio Constitution.
CHRISTLEY, P.J., dissents with Dissenting Opinion,
NADER, J., concurs.
[1] Even if the charge under R.C. 4511.31 has not been disposed of, we view the trial court's November 20, 1997 judgment as a final appealable order. Pursuant to Loc.R. 6(A) of the Eleventh District Court of Appeals, "[a] separate Notice of Appeal shall be filed in the trial court for each case appealed therefrom whether or not the case was consolidated in the trial court for hearing with one or more other cases." The two charges against appellant were each given a separate number in the trial court. Thus, if appellant had been convicted of improper passing, he could have filed a second notice of appeal that was separate and apart from the present appeal in which he challenges his conviction for driving under suspension.
[2] On this point, R.C. 1.52(A) is instructive. It states that "[i]f statutes enacted at the same or different sessions of the legislature are irreconcilable, the statute latest in date of enactment prevails."
 DISSENTING OPINION